**Ex parte Merlin Wayne STANDARD.**

**No. 8831.**

Court of Civil Appeals of Texas, Texarkana.

Feb. 12, 1980.

Neal Birmingham, Atlanta, for appellant.

WILLIAM J. CORNELIUS, Chief Justice.

This is an original habeas corpus proceeding brought by Merlin Wayne Standard seeking release from a commitment for contempt on the ground that he was given no notice of the contempt hearing. Standard was found in contempt for 'violating an order of the Cass County District Court in a custody suit directing him to return his minor child to the court's jurisdiction. The judgment of contempt sentenced Standard to sixty days in jail and fined him a total of $2,700.00 for failure to appear at the custody hearing. We agree with the relator's contention that he was not afforded due process prior to commitment and we order him discharged from custody.

On August 27, 1979, Standard, a resident of the State of Louisiana, petitioned the District Court of Cass County, Texas, to terminate the parent-child relationship existing between his common law wife, Terry Bledsoe, and their child, Richard Dwayne Standard. Standard's petition alleged that in May or June, 1979, Terry had taken their infant child and left him with Richard and Renee Bledsoe (her brother and sister-in-law) in Cass County. Standard alleged that Terry had abandoned the child and that her present whereabouts were unknown.

The trial judge entered temporary orders directing the Bledsoes to return custody of the child to Standard, appointed him managing conservator, and set a hearing on August 31, 1979, for Terry Bledsoe to show cause why the temporary orders should not be made permanent.

On the date set for the hearing, Standard was visiting his relatives in Oklahoma and did not appear at the hearing in Cass County because his attorney had advised him that they would not be able to obtain service on Terry Bledsoe. Terry Bledsoe, along with her brother, Richard, did appear; Standard's attorney was also present. At the hearing the trial judge revoked his previous order and appointed Terry Bledsoe the managing conservator of Richard Dwayne Standard. By this order, Standard was directed to deliver the child to Terry Bledsoe under risk of a $200.00 fine for each day after August 31, 1979, that he failed to deliver the child to its mother. Standard, who was still in Oklahoma, delivered the child to the mother eleven days later, after being ordered to do so by an Oklahoma district judge.

After receiving custody of the child, Terry once again delivered him to her brother and sister-in-law. On October 26, 1979, the Bledsoes petitioned the District Court of Cass County for adoption of Richard Dwayne Standard and to terminate the parental rights of Terry Bledsoe and Merlin Standard. Terry Bledsoe initially consented to the adoption and signed an affidavit relinquishing her parental rights. Standard, however, opposed the adoption and once again petitioned the district court for the return of his child. A hearing was held on the adoption petition on December 17, 1979, at which Standard appeared and testified. During the course of this hearing, the district judge, on his own motion, questioned Standard about his disobedience of the orders entered at the previous hearing. The judgment of contempt recites:

"And during the course of the hearings the Court suspected that the said Merlin Wayne Standard stood in civil and criminal contempt both direct and constructive and then and there in open court gave notice to Merlin Wayne Standard, in the presence of his attorney, that the Court suspected Merlin Wayne Standard to be in contempt of Court on the basis of evidence adduced and upon being asked how he plead to such complaint the said

Merlin Wayne Standard stated that he was guilty of such contempt and thereafter through statements made in open court by the attorney representing the said Merlin Wayne Standard it was admitted that the said Merlin Wayne Standard had willfully and contemptuously disobeyed the Order of the court for the stated reason that he earnestly believed obedience to the Court's Order would not be in the child's best interest."

The judge thereupon found Standard in contempt and fined him $200.00 for each of the eleven days he had failed to deliver the child to Terry Bledsoe, plus $500.00 for failing to appear at the show cause hearing, for a total fine of $2,700.00. Standard was also sentenced to sixty days in jail. This Court conditionally granted Standard's petition for writ of habeas corpus on December 17, 1979, and admitted him to bail pending determination of the matter on the merits.

■ This is a case involving a punitive, rather than a coercive, contempt order. *Ex parte Werblud*, 536 S.W.2d 542 (Tex.1976); *Ex parte Jones*, 160 Tex. 321, 331 S.W.2d 202 (1960). Because the alleged acts or omissions did not occur in the judge's presence, the case may also be classed as one involving constructive contempt. *Ex parte Mouille*, 572 S.W.2d 60 (Tex.Civ.App. Houston—1st Dist.1978, no writ).

■ No affidavit or complaint charging Mr. Standard with contempt was filed. Neither was he given any written notice of an intent to charge him with contempt. Instead, he was questioned in open court by the judge about an alleged contempt that arose out of a prior and unrelated hearing. He was not given an opportunity to confer with his attorney or to adequately prepare a defense. Contempt charges are quasi-criminal in nature, and constitutional requirements of due process demand that the accused be given notice of the charges against him and a reasonable opportunity to prepare a defense. *Ex parte Pyle*, 134 Tex. 148, 133 S.W.2d 565 (1939). In cases of constructive contempt where the record does not show adequate notice, and where an adequate hearing was denied, the con-

tempt judgment is void. *Ex parte Hodge*, 389 S.W.2d 463 (Tex.1965).

■ We conclude that the relator was not afforded due process and accordingly order him discharged from custody.